# GARVEY TIRELLI & CUSHNER LTD.

50 MAIN STREET, SUITE 390 • WHITE PLAINS, NEW YORK 10606
PHONE (914) 946-2200 • FAX (914) 946-1300 • www.GTCFirm.com

Lawrence A. Garvey*
Linda M. Tirelli**
Todd S. Cushner***
Irina Lust****
James Rufo****

*Admitted CT, NY, USDCT, SDNY and EDNY
**Admitted CT, USDCT, SDNY and EDNY
***Admitted NY, NJ, USDCT, SDNY and EDNY
****Admitted NY, SDNY and EDNY

January 6, 2016

Honorable Judge Robert D. Drain
United States Bankruptcy Judge
UnitStates Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601

RE:   In re Francine Silva Ch 13 Case Number 14-23184 (rdd) S.D.N.Y.
        Loss Mitigation Status Report

Dear Honorable Judge Drain:

Please accept this letter as a status report pertaining to the ongoing loss mitigation program pertaining to the Debtor's 1st mortgage loan, claimed to be serviced by Caliber Home Loans, and the 2nd mortgage loan, claimed to be serviced by JP Morgan Chase Bank.

Your Honor may recall entering an order on December 18, 2015 directing future proceedings as to both creditors participating in the court ordered loss mitigation program.  Unfortunately, despite Your Honor's deadline of "10 days after entry of the order" all orders have not been complied with and it is my hope that the same will be rectified by the creditors, without further delay.

1) **Second Mortgage Loan / JP Morgan Chase:** We did receive the corrected loan modification agreement and it has been signed and returned to opposing counsel along with payment.  We are waiting for Case to send payment of $750 which was due on December 28, 2015 as per the order entered on December 18, 2015.  Assuming Chase send proper payment and returns a signed original modification agreement to the undersigned this matter will be conclude.

2) **First Mortgage Loan / Caliber Home Loans:** As of the date and time of this letter the undersigned confirms that we did receive payment of $750 for legal fees from Caliber.  We have not received anything by way of HAMP analysis with inputs or an explanation as to why HAMP was not considered.  We did receive an offer for a trial loan modification which makes no sense.  The monthly payment requested is more than $800 above the last known payment amount and far exceeds what the debtor can afford.  Please note that the relatively modest arrears

is in the approximate amount of $32,000.00 and the tacked on $800 per month is extraordinary for such a small arrears.  As counsel for the Debtor I requested a copy of the program guidelines under which the Debtor received this modification.  By contrast, I am attaching a copy of the October 13, 2015 short denial letter referencing investor guidelines, not identifying the investor nor providing the guidelines.  It is interesting that said letter claims the LTV is below the floor permitted by the "investor" and that the interest rate is also below the "floor" allowed for modifications. *How is it that the debtor is eligible for a modification (albeit an unaffordable additional $800 more per month)in December 2015 but was not eligible for anything in October 2015?*  As set forth below, the undersigned sees a business practice of unjustly denying modification without proper consideration which also caught the attention of the New York State Attorney General, Eric Schneiderman.  To the extent a modification was denied in this case without full consideration under HAMP and all available programs, the Debtor avers that the same is an act of bad faith and further sanctionable under the court ordered loss mitigation program.

Because of the level of continued obstinacy on the part of Caliber in not providing a HAMP analysis, the undersigned decided to conduct additional research into the alleged "servicer" Caliber Home Loans and its parent company, a hedge fund, Lone Star Funds.  I am attaching 2 articles from the New York Times and Bloomberg News, dated October 6, 2015 and October 7, 2015 respectively.  Apparently the New York State Attorney General is investigating the servicing practices of Calber and its parent company, Lone Star.  Also attached is an article from the New York Times dated September 2015 reporting the vast amount of distressed mortgage loans purchased by Lone Star from the likes of HUD and Chase.

In this case, the security note, which the Debtor maintains to be a *non*-negotiable instrument, originated with Washington Mutual Bank, FA in 1999.  The Court should note that the Debtor's schedules, chapter 13 plan and request for loss mitigation, none of which are met with objection, identify only Chase as the disputed creditor.  Your Honor's orders granting loss mitigation on both mortgages name Chase, not Caliber.   Opposing counsel, Robert Griswold, filed an appearance on behalf of Chase as servicer to US Bank as Trustee to LSF 9 Master Participation Fund (see copy of noted appearances by Attorneys as maintained on ECF attached hereto).  There is no notice of transfer filed with the court and the debtor has not received letters from either Chase or Caliber stating the dates of servicing transfer, if any, as required under Regulation X.

The Proof of Claim filed fails to offer any documentation to explain any chain of title from the originating lender through to the named creditor, a Lone Star Fund trust identified as "US Bank as Trustee to LSF 9 Master Participation Fund."  There is simply no document to explain how this non-negotiable instrument came to be acquired by said trust.  To the extent Chase is the sole named plaintiff on the 2014 foreclosure complaint and is the only servicer from which the Debtor

*Hon. Robert D. Drain*
*January 6, 2015*
*Page 3 of 3*

received statements, and the only servicer identified on the documents attached to the proof of claim, this loan should clearly have been considered for a HAMP modification because Chase is bound to consider loans for modification under HAMP.

I am attaching a copy of a purchase agreement filed in the infamous Res Cap bankruptcy pending before the Honorable Judge Martin Glenn. Section 6.22 of said agreement between Lone Star and Res Cap ( ie GMAC ) includes language specifically addressing HAMP eligible loans and how the same are to be handled by the purchaser. I bring this to the court's attention because it stands to reason that such a purchase agreement might also exists as between Lone Star and Chase or whomever the seller was at the time of the alleged purchase. The Debtor currently has no information as to how or when the named creditor allegedly acquired the loan and would like to inspect an executed copy of any purchase agreement to review for a carve out provision mandating my client's loan be considered for a HAMP modification. Based on information and belief, Caliber conducted no analysis for HAMP. On the chance it was required to do so and failed to, Caliber would have acted in bad faith contrary to the court ordered loss mitigation program.

The undersigned requested a copy of any pertinent purchase agreement from opposing counsel. To the extent more information is required, I would like to address the need for a 2004 motion at the next court appearance on Wednesday, January 13, 2015. I have also filed a complaint with the US Trustee's office and am forwarding a copy of this letter to my contacts at the NYAG.

Your Honor's time and consideration to this case is most appreciated. I look forward to appearing before the Court next week and remain

                                        Very truly yours,

                                        _____
                                        Linda M. Tirelli, Esq.

Enclosures
cc:
Robert Griswold, Esq.
Ms. Francine Silva
Greg Zipes, Esq., USDOJ, Office of the US Trustee
Jody Kava, Esq.