## TEITELBAUM LAW GROUP, LLC
*Attorneys at Law*

May 18, 2016

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas St.
White Plains, New York, 10601

**Re:**   **In re Silva Case No. 14-23184**

Dear Judge Drain:

On or about April 26, 2016, I was retained as co-counsel for Caliber Home Loans, Inc. ("Caliber") as servicer for U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust in the above referenced matter.

I am writing to provide the Court with an update as to the status of the ongoing loss mitigation efforts and to request that the Court address the unauthorized and improper actions of counsel for the Debtor in connection with the public filing and dissemination of the Mortgage Loan Purchase Agreement between JPMorgan Chase Bank, N.A., Seller and Servicer and LSF9 Mortgage Holdings, LLC, as Purchaser, dated as of October 29, 2014 (the "MLPA") and the Assignment and Assumption Agreement between JPMorgan Chase Bank, N.A., as assignor and Caliber Home Loans, Inc., as Assignee, dated as of December 1, 2014 (the "AAA") produced to counsel for the Debtor at the March 23, 2016 status conference.

Since April 26, 2016, I have been working with (i) Caliber to respond to the Court's directive to produce a life of loan history to counsel for the Debtor by May 13, 2016; (ii) Caliber to offer a loan modification to the Debtor; and (iii) counsel for the Debtor to address the public filing and dissemination of the MLPA and the AAA.  I have been successful in two of three of the above.

By way of background, this loan was originated by Washington Mutual pursuant to a certain promissory note in the original principal amount of $350,000.00, dated November 2,

---

1 Barker Avenue
Third Floor
White Plains, New York 10601
Telephone: 914-437-7670
Fax: 914-437-7672
All service of papers to White Plains.  Fax and E-Mail Service Accepted

E-Mail: jteitelbaum@tblawllp.com
Website: www.tblawllp.com

9 East 40th Street
Fourth Floor
New York, New York 10016
Telephone: 646-233-3013

1999 and a certain mortgage, dated November 2, 1999 (the "Loan") upon the premises identified as 53 Boulevard, Pelham, N.Y. 10803 (the "Premises"). The Loan bears a loan identification number ending in *****9076. The current owner of the Loan is LSF9 Mortgage Holdings, LLC ("LSF9") and the current servicer of the Loan is Caliber. The Loan was service transferred to Caliber from Chase on or about December 8, 2014.

The last status conference on this matter was held on March 23, 2016 and the next conference is scheduled for June 22, 2016. A copy of the transcript of the March 23 hearing is attached as Exhibit A. Among the issues covered at the March 23 hearing was (i) the status of a loan modification for the Debtor, (ii) Caliber providing back up for its assertion that the Loan could not be reviewed for a modification under HAMP, (iii) Caliber providing a life of loan payment history to counsel for the Debtor by May 13, 2016 (Exhibit A at page 13, line 2), and (iv) Caliber turning over to counsel for the Debtor the MLPA and the AAA. Each of these items is addressed in turn below.

***Life of Loan History:*** On May 13, 2016, my office delivered (via email at 6:05 p.m.) to counsel for the Debtor the life of loan history received by Caliber from the prior servicers for the period prior to December 8, 2014 and from the records of Caliber for the period December 8, 2014 to present. The cover email without attachments is attached hereto as Exhibit B. This history detailed each transaction related to the Loan, including each payment made, each payment which was late or not made, fees and charges, escrow advances and application of payments to principal, interest or charges and escrow advances. In this submission, in connection with the offer of a loan modification discussed below, Caliber agreed to waive certain costs and fees associated with the Loan in the amount of $724.06.

On May 17, 2016, a further submission was sent to counsel for the Debtor (the "May 17 Letter"). A copy of the May 17 Letter without exhibits is attached hereto as Exhibit C. Attached to the May 17 Letter was a revised loan history for the period December 8, 2014 to present. As detailed in the May 17 Letter, this revised history was provided to update the fees and costs Caliber had agreed to waive in connection with a loan modification. The total fees and costs which Caliber agreed to waive increased to $7,677.44 and included all post-petition fees and expenses charged to the Loan. The only remaining fees and expenses charged to the Loan were $1,606.39 of pre-petition fees and expenses identified in the Payoff Letter attached to the May 17 Letter and the Proof of Claim filed in the bankruptcy case.

Caliber has complied with the Court's order concerning production of the life of loan history.

***Back Up Concerning HAMP:*** At page 5, line 11-17 of the March 23 transcript, the Court instructed that, unless otherwise resolved by the parties, the Court would need to address the issue of whether the Loan could be reviewed by Caliber under HAMP.

In an effort to address the issue, the May 17 Letter provided an explanation and supporting documentation concerning how the Loan was conveyed to LSF9 and service transferred to Caliber and why the Loan could not be considered by Caliber for a modification under HAMP. The explanation provided is as follows:

Only two types of service providers can participate in MHA programs including HAMP: (i) registered service providers, pursuant to a Servicer Participation Agreement (a "SPA") executed prior to October 3, 2010 with Fannie Mae, as Financial Agent for the United States[1]; or (ii) non-registered service providers which receive a transfer of a loan or servicing rights from a registered service provider pursuant to an approved Assignment and Assumption Agreement (an "AAA") which identifies "Eligible Loans" as loans transferred subject to an SPA.[2]

Caliber has not executed an SPA with Fannie Mae and is not a registered service provider. As such, only loans transferred as Eligible Loans pursuant to an AAA could be serviced by Caliber under an MHA program, including HAMP.

Pursuant to the MLPA, LSF9 purchased from JPMorgan Chase Bank, N.A. ("Chase") the loans identified on the Mortgage Loan Schedule attached to the MLPA. (MLPA Section 2). The Loan appears on the Mortgage Loan Schedule attached to the MLPA. The MLPA further provides that (i) LSF9 or its servicer will execute where applicable an AAA to participate in HAMP with respect to loans service transferred by a SPA servicer provider. (MLPA Section 7.b.i); and (ii) Chase, as servicer of the loans identified on the MLPA, will continue to service loans identified on the Mortgage Loan Schedule until the occurrence of the Servicing Transfer Date. (MLPA Section 10). The AAA, dated December 4, 2014 provides that (i) Chase, in its capacity as an SPA servicer, assigned to Caliber, in its capacity as servicer for LSF9 under the MLPA, all rights and obligations under a certain SPA between Chase, as servicer, and Fannie Mae with respect to "Eligible Loans" identified on Schedule 1 to the AAA; and (ii) Caliber, in its capacity as servicer for LSF9 under the MLPA, assumed all rights and obligations under that certain SPA between Chase, as servicer, and Fannie Mae with respect to "Eligible Loans" identified on Schedule 1 to the AAA.

The Loan was service transferred on or about December 8, 2014.

The loans on Schedule 1 to the AAA are the only loans which were service transferred to Caliber pursuant to a SPA. The Loan was not included on Schedule 1 to the AAA and therefore Caliber could not service the Loan under a SPA or any MHA program, including HAMP.

Caliber submits that it has fully addressed the HAMP issue and that the issue is moot based upon the offer of a loan modification described below.

---

[1] See pages 11 and 13 of Making Home Affordable Handbook which can be found at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_5.pdf.

[2] *Id.*

*Loan Modification Offer*: Caliber is pleased to report that the May 17 letter included a loan modification offer with the following terms:

*Trial Modification*: The Debtor will need to execute and return a trial modification agreement (attached to the May 17 Letter) on or before June 1, 2016 and will need to timely make three monthly trial payments of $2,761.24 (P+I $1,329.63; Escrow Taxes and Insurance $1,431.61), commencing on June 1, 2016.

The trial payment amount was calculated based upon a 4% interest rate and a 480 month amortization of the current payoff amount of $318,328.35 as set forth in the Payoff Letter attached to the May 17 Letter. The Escrow payment is based upon current information as to property taxes and the lender placed insurance that was previously applied to the Loan. The Escrow payment will be adjusted upon completion of the Trial Modification based upon updated figures for taxes and insurance maintained by the Debtor pursuant to the terms of the Loan.

*Permanent Modification*: Upon completion of the Trial Modification pursuant to its terms and provided there has been no material change to the condition of the Premises, the Debtor will be offered, subject to Bankruptcy Court approval, a permanent modification using the a 4% interest rate fixed for a 480 month fully amortizing term. The amount of the Loan will be recalculated after application of the payments received under the Trial Modification. As such, at this time it is not possible to provide precise figures for the Permanent Modification, but is assumed that the P+I payments will be substantially similar to the trial payments. Escrow payments will be adjusted periodically to reflect actual amounts due for taxes and insurance.

No pre-payment to cure post-petition arrears was requested as part of the modification despite an affidavit filed by the Debtor with the Court (ECF No. 33) wherein the Debtor admitted that at least $45,000.00 in post-petition mortgage payments have not been made and that she had been holding these funds until she could confirm the proper party to pay and the correct loan amount. Nevertheless on May 9, 2016, counsel for the Debtor requested that Caliber consider a loan modification which did not include a pre-payment of post-petition defaults. As requested by counsel for the Debtor, the terms of a modification do not require an upfront payment to cure the post-petition defaults. If the Debtor should chose to cure some or all of the post-petition defaults, the terms of a modification will be revised to reflect the cure payment received.

*Comparison of Current Loan to Modified Loan*: Under the Loan: (i) current P+I is $1,660.40 based upon a variable rate loan which is presently approximately 3%; (ii) the Loan matures in 13 years; and (iii) the Debtor is obligated to pay taxes and insurance directly to the taxing authority and insurer. Under the Trial Modification and the anticipated Permanent Modification: (i) monthly P+I is

projected to be approximately $1,330 based upon a fixed rate 4%, 40 year loan; and (ii) Caliber will collect a monthly Escrow payment for taxes and insurance.

***The MLPA and AAA***: At the March 23 conference, in connection with addressing the issue of whether the Loan could be reviewed for a modification under an MHA program such as HAMP, the Court directed counsel for Caliber to turn over to Ms. Tirelli, the MLPA and AAA, stating:

> "They're not private. Ms. Tirelli, you're not going to put them on the internet or anything; you're going to review them. And then they can be dealt with in front of me."

Exhibit A, page 3, lines 15-18.

During the discussion concerning the terms upon which the MLPA and AAA would be turned over, counsel for the Debtor represented to the Court that she (i) wanted to inspect the MLPA and the AAA and provide a copy to her client (Exhibit A, at page. 4, lines 10-11); and (ii) "have an expert actually review these . . . to make sure they are the right documents." (*Id.* at page 12, lines 8-10). It was further agreed and directed by the Court that the MLPA and AAA would not be filed on the docket.

> MS. TIRELLI: So, am I going to have -- on the record, can I have the documents?
> THE COURT: Yes.
> MR. GRISWOLD: Yes. I'll turn over the documents, but Caliber has requested that they not be filed on the docket certainly.
> THE COURT: Well, they wouldn't be filed on the docket.
> MR. GRISWOLD: Okay. As long as that's the understanding.

(Exhibit A at page 11, lines 5-14).

Based upon the foregoing, the MLPA and the AAA were turned over to counsel for the Debtor in open Court on March 23.

Between March 23, and April 18, 2016, there was no substantive communication between counsel concerning this matter. On April 19, in an effort to avoid motion practice concerning claims of confidentiality of the MLPA and the AAA, Stiene & Associates faxed to counsel for the Debtor a draft confidentiality stipulation. A copy of the fax is attached as Exhibit D. Without responding to this communication, on April 21, 2016, counsel for the Debtor filed a status letter on the Court docket in this case as ECF No. 37. In direct contravention of the Court's directive that the documents would not be filed on the Court docket, attached to the status letter as Exhibits B and C were unredacted copies of the MLPA and the AAA including schedules with complete loan numbers.

This filing, for no apparent reason, was in blatant disregard for the agreements and Court directive that the MLPA and AAA not be filed on the docket. Nevertheless, the undersigned continued to try to consensually resolve the disclosure issue and to resolve the entire dispute by obtaining an offer for a loan modification as follows:

- On May 2, the undersigned emailed to counsel for the Debtor the letter attached hereto as Exhibit E requesting that counsel immediately consent to the withdrawal of the MLPA and the AAA from the Court docket.

- Following a telephone conversation with counsel for the Debtor, on May 5 the undersigned prepared a form of a joint request to the Court for the consensual withdrawal of the MLPA and AAA from the Court docket and the agreement that the MLPA and AAA would not be publicly disseminated. A copy of the May 5 letter is attached as Exhibit F.

- On May 9, 2016, counsel for the Debtor responded to this proposed joint submission stating that it was "problematic" because the MLPA and AAA had already been disseminated to numerous parties. A copy of the May 9 email is attached as Exhibit G, and provides in pertinent part:

    "However, I've already shared the documents with *colleagues,* my own certified Fraud Examiner, Judge Drain, *the Ch 13 trustee, clients, the attorneys who are actively investigating Caliber and LSF with the office of the NYAG and office of NYDFS.*" (emphasis added).

- On May 10, 2016 the undersigned sent a revised joint submission to counsel for the Debtor to address the latest improper dissemination of the MLPA and the AAA. A copy of the May 10 revised letter is attached as Exhibit H.

- On May 12, 2016 counsel for the Debtor refused to execute the revised proposed joint submission.

- On May 13, 2016, (i) the loan history was provided to counsel for the Debtor; and (ii) counsel was advised that (a) Caliber expected to provide a loan modification by May 18, 2016, and (b) as no agreement was reached, Caliber would be seeking relief from the Court in connection with the dissemination of the MLPA and AAA. (Exhibit B).

Having exhausted attempts to consensually resolve this matter, Caliber must now request that Debtor's counsel's blatant disregard of the agreements and Court directives of the March 23 hearing be addressed by the Court. In addition, Caliber is concerned that the MLPA and AAA were filed with the complete schedules of loan numbers for mortgages in a specifically identified trust for no apparent reason and with no relevance to any issue before the Court. It is submitted that such a filing was not only unnecessary but that it violates Bankruptcy Rule 9037(a) (4) and potentially subjects persons wholly unrelated to this case to risk of identity fraud.

Caliber respectfully requests that the Court implement what was agreed to and directed by the Court on March 23 by (i) directing that the MLPA and the AAA be stricken from the Court docket pending further order of this Court; (ii) directing counsel for the Debtor to disclose to the undersigned and the Court the identity of all persons with whom the MLPA and AAA have been shared, including "colleagues", "clients", "fraud examiners"; (iii) directing counsel for

the Debtor to confirm in writing to the persons identified in (ii) above that they are not permitted to further disclose or disseminate the MLPA or AAA absent further order of the Court; and (iv) admonishing counsel to make no further disclosure of these documents absent further order of the Court.

Respectfully,

Jay Teitelbaum

cc. Charles Stiene, Esq.
Linda Tirelli, Esq.