# GARVEY TIRELLI & CUSHNER Ltd.

50 MAIN STREET, SUITE 390 • WHITE PLAINS, NEW YORK 10606
PHONE (914) 946-2200 • FAX (914) 946-1300 • www.GTCFirm.com

Lawrence A. Garvey*
Linda M. Tirelli**
Todd S. Cushner***
Irina Lust****
James Rufo****

*Admitted CT, NY, USDCT, SDNY and EDNY
**Admitted CT, USDCT, SDNY and EDNY
***Admitted NY, NJ, USDCT, SDNY and EDNY
****Admitted NY, SDNY and EDNY

June 15, 2016

Honorable Judge Robert D. Drain
United States Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601

**RE:    In re Francine Silva 14-23184-rdd**

Dear Honorable Judge Drain,

Please be advised that this firm continues to represent the debtor, Ms. Francine Silva, in all matters pertaining to her pending chapter 13 case. Please accept this letter as a status report and as a formal response to Mr. Teitelbaum's letters dated May 18, 2016 and May 31, 2016.

As indicated by Mr. Teitelbaum, indeed, Caliber made Ms Silva an offer she could not refuse by way of a reasonable trial loan modification with known terms of a permanent modification. While it is not a HAMP modification the terms are such that Ms. Silva can afford to remain in her home. My client made her first payment and will make two additional trial payments before receiving a permanent loan modification.

While the end result of a loan modification would in most cases happily conclude the loss mitigation process, Mr. Teitelbaum and his client insisted upon filing further letters to the court to build a record of defending the actions of Caliber instead of discussing how Caliber can or will work to adopt new processes to fix its practices of consumer abuse and misinformation put before this court. Perhaps to no one's surprise, Caliber through counsel also took the route of pointing fingers at the undersigned in hopes of taking the limelight off itself.

As the court knows, Caliber through its own letters and through prior counsel insisted that transfer documents specifically prohibited Caliber from considering Ms. Silva's loan for a HAMP modification. Caliber denied Ms. Silva any modification, came back when questioned and offered a repayment plan which included an upfront payment of $45,000.00 and then only after being forced to produce the transfer documents and appearance of new counsel, did a reasonable modification materialize.

At the last court appearance, March 23, 2016, the court directed me to come back to it if

the transfer documents did not say what Caliber and its prior counsel indicated the documents would say. All parties are aware that no motion for protective order was ever filed prior to the March 23rd appearance and when opposing counsel attempted to argue on the spot that the documents should be kept confidential, Your Honor ruled from the bench that the documents were not confidential. One would think that if Caliber or its lawyers wanted to keep the document confidential, a written motion would have been filed the very same day. Because no protective order was sought, no motion filed and because after careful review I determined the documents did not say what Caliber indicated the documents would say, I did as I was directed to do by this court and brought the issue to the court in a status report nearly a month later on April 21, 2016. The transfer documents were not put up on some blog or internet website or social media. The documents were responsibly brought to the court filed on ECF as they should be. The debtor is under no obligation to file motions to protect the documents nor is she under any obligation to seek some sort of sealing of the documents. Caliber has now had nearly 3 months take some measure -any measure- it thought appropriate and still, to this day, no motion for protective order has been filed.

Mr. Teitelbaum failed to tell the court that I agreed not to object to his attempting to pull the documents down from the court's ECF system for the purpose of allowing him to file a proper motion for protective order. When he presented me with a stipulation preventing me from sharing the document, I advised him in an email that I could not agree to this because I had already shared the documents with third parties. I maintained my original offer not share any further and to not object to the documents being taken down until a motion for protective order be decided. Instead of accepting the terms and proceeding with a motion for protective order, Caliber and its lawyer decided it would be a better idea to threaten me with sanctions and continue the bullying of me and my client. Attached as **Exhibit "A"** please find my email to Mr. Teitelbaum dated May 9, 2016.

As for the substance if the transfer documents, attached hereto as **Exhibit "C"** please find an affidavit of Bernard Jay Patterson, CFE. As it turns out, Caliber was, as suspected, acting in bad faith and made material misrepresentations to the court about the content of the transfer documents. Your Honor can certainly read the documents and determine the representations made to this court were not in good faith. Mr. Patterson confirms what the undersigned and the Debtor maintained all along, Caliber should have considered Ms Silva for a HAMP modification at the start and was not restricted from doing so based on the only 2 transfer documents provided.

Furthermore, as presented in an exhibit to Debtor's April 21st status report to the court Chase provided a letter dated March 23, 2016 acknowledging Ms. Silva had submitted documents for a loan modification application pre-petition in 2014. (copy attached as **Exhibit "B"**) According to Chase, its representative had a phone conversation with Ms. Silva on **March 18, 2014** (pre-petition and pre-transfer) advising her that more information about her mother's contribution of social security funds required more documentation. Ms. Silva maintained all along that the she was in constant contact with Chase in 2014 prior to filing and got nowhere in trying to modify the loan on her own, without an attorney. She was never denied a modification, no determination by Chase

had ever been made. This rings true as Mr. Patterson points out that Chase's letter in response to a Notice of Error included, as an exhibit, a letter to the borrower dated in August 2014 requesting documentation for a loan modification with a due date in November 2014. As we all now know, the loan was sold to Lone Star Fund in October 2014 prior to the document due date and therefore under federal guidelines, the loan was in the middle of a loan modification application at the time of transfer. Chase never made a determination as to HAMP eligibility and never denied Ms. Silva's modification. Chase gave the unrepresented borrower the run around asking for documents and clarifications and new applications for over a year pre-petition. Caliber at all times relevant would have had access to all of the records from Chase which would have been transferred during the boarding process of the loan from Chase's system of record to Caliber's system of record.

The loss mitigation process in this case has been very long and very expensive. Only caliber can be blamed for the amount of time and effort that has gone into this file. As the Court and trustee may suspect, the debtor is damaged and thus so are the unsecured creditors to the tune of the ultimate final fee application to be presented by this firm. We will wait to discuss this matter further with the court at the next appearance on June 22, 2016 before deciding how next to proceed.

Thank you for your continued time and attention to this case. I remain

        Very truly yours,


        <u>Linda M. Tirelli</u>
        Debtor's Attorney


cc:
Jay Teitelbaum, Esq.
Jeffrey Sapir, Esq.
Ms. Francine Silva

# EXHIBIT "A"

# Linda Tirelli

| | |
|---|---|
| **From:** | Linda Tirelli |
| **Sent:** | Monday, May 09, 2016 1:29 PM |
| **To:** | 'jteitelbaum@tblawllp.com' |
| **Subject:** | Silva / SETTLEMENT CORRESPONDENCE PROTECTED UNDER FRE 408 |
| **Attachments:** | Silva Draft letter to Court May 5 LT MARK UPS.doc |

Jay –

In regards to the letter, the last paragraph is problematic. I can agree not to post the documents to ECF before June 22nd, and I will go so far as to say I won't post the documents publically on the internet, which I wouldn't do anyway. However, Ive already shared the documents with colleagues, my own certified Fraud Examiner, Judge Drain, the Ch 13 trustee, clients, the attorneys who are actively investigating Caliber and LSF with the office of the NYAG and office of NYDFS. While I do not see any of the sharing to date as public dissemination, the documents have been shared and I was up front about this on record and in my communications with Attorney Robert Griswold in court.

Also, in writing the letter to the court, I was fulfilling my duty as an officer of the court. Clearly the documents do not say what Caliber and its attorneys have said the documents would say and that is, as far as I am concerned, bad faith and a material misrepresentation to the court. If we are to resolve this and I hope we can, my client will refrain from filing the Motion for Sanctions for Bad Faith under the Loss Mitigation Program. If we are acting in good faith all such motions should be put on hold pending a strong attempt at a global resolution.

In terms of what a permanent mod should look like, there is a second lien on this property, serviced by Chase, which was modified with the Steine firm earlier on in the case. This cost is something my client is mindful of when planning her housing budget. My client would like to see any loan mod not include any lump sum payment and have all sums rolled into the loan the wat traditional mods are handled. In the event there is a lump sum, we ask it be handled via a non-interest bearing forbearance balloon – similar to Fannie and Freddie mods where a forbearance sum is interest free and due in full at maturity. Also my client wants her legal fees paid for the excessive time and work that has had to go into this case which should have been resolved in the first 3-5 months of loss mitigation.

I look forward to receiving the accounting and remain optimistic that all add-on fees and charges are being eliminated so we wont be dealing with additional objections.

Sincerely yours,

<u>Linda M. Tirelli, Esq.</u>
**Garvey Tirelli & Cushner, Ltd.**
Westchester Financial Center
50 Main Street, Suite 390
White Plains, NY 10606

Phone: (914)946-2200
Fax: (914)946-1300
WWW.THEGTCFIRM.COM
WWW.BANKRUPTCYPROTECTIONEXPERT.COM
*Serving Individuals and Small Businesses in New York,
New Jersey and Connecticut*

1

## TEITELBAUM LAW GROUP, LLC
*Attorneys at Law*

May 5, 2016

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas St.
White Plains, New York, 10601

**Re:   In re Silva Case No. 14-23184**

Dear Judge Drain:

    We have been retained as co-counsel for Caliber Home Loans as servicer for U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust ("**Caliber**") in the above referenced matter. We are writing jointly with counsel for the Debtor to request that the Court direct the removal of two documents filed on the Court docket as ECF No. 37-2 and 37-3. ECF 37-2 is a certain Mortgage Loan Purchase Agreement between JPMorgan Chase Bank, N.A., Seller and Servicer and LSF9 Mortgage Holdings, LLC, as Purchaser, dated as of October 29, 2014 (the "**MLPA**"). ECF 37-3 is a certain Assignment and Assumption Agreement between JPMorgan Chase Bank, N.A. as assignor and Caliber Home Loans as Assignee, dated as of December 1, 2014 (the "**AAA**").

    These documents were provided to Ms. Tirelli in court on March 23, 2016 at the direction of the Court and upon Caliber's belief that they would not be publicly filed or placed on the Court docket prior to further review by the Court. Counsel for the Debtor did not have the same understanding and caused the documents to be filed as exhibits to a status letter filed as ECF Docket No. 37.

    By letter dated May 2, 2016, the undersigned counsel for Caliber requested that the MLPA and AAA be removed from the Court docket. On May 4, 2016, the undersigned conferred by telephone and reached an agreement regarding the removal of the MLPA and AAA from the public docket. As counsel for the parties are working to resolve issues relating to loss mitigation, without any waiver of any rights by any party, and in order to avoid potentially unnecessary

---

1 Barker Avenue
Third Floor
White Plains, New York 10601
Telephone: 914-437-7670
Fax: 914-437-7672
All service of papers to White Plains. Fax and E-Mail Service Accepted

E-Mail: jteitelbaum@tblawllp.com
Website: www.tblawllp.com

9 East 40th Street
Fourth Floor
New York, New York 10016
Telephone: 646-233-3013

motion practice relating to whether ECF Docket Nos. 37-2 and 37-3 should be subject to a protective order under Bankruptcy Code §107, the undersigned jointly request that ECF Docket No. 37-2 and 37-3 be immediately removed from the Court docket.

The undersigned have further agreed that in no event prior to a further hearing on this matter, which is presently scheduled for June 22, 2016, shall the Debtor cause the MLPA or thee AAA to be ~~publicly disseminated or~~ filed on the Court's docket. Caliber reserves all rights to file a protective order with respect to the MLPA and the AAA and the Debtor reserves all rights to oppose any such motion.

Respectfully,

Jay Teitelbaum

Consented and Agreed this __ day of May 2016

_____
Linda Tirelli, Esq.

# EXHIBIT "B"

Executive Office (Mail Code OH4-7120)  
3415 Vision Drive  
Columbus, OH 43219-6009

**CHASE** ○

March 23, 2016



Garvey, Tirelli & Cushner, Ltd.  
Attn: Linda M. Tirelli, Esq.  
50 Main Street, Suite 390  
White Plains, NY 10606

**We've confirmed there hasn't been an error on your client's account**
Customer Name:     Francine Paterra  
Account:           ******0142  
Reference Number:  20160120EOCHF0007  
Property Address:  53 Boulevard  
                   Pelham, NY 10803

**Dear Linda M. Tirelli, Esq.:**

We're writing about your letters dated January 14, 2016, and February 15, 2016, which we received on January 19, 2016, and February 19, 2016, respectively, about a possible error with Francine Paterra's mortgage loan.

We've completed our review and confirmed that there hasn't been any error with the loan because Chase transferred the servicing to Caliber Home Loans, Inc.(Caliber) on December 1, 2014. Prior to the servicing transfer, we confirmed that your client did not respond to our solicitations to be reviewed for payment assistance under the Home Affordable Modification Program (HAMP). Chase is a Servicing Participation Agreement (SPA) servicer, meaning Chase has a Servicing Participation Agreement to offer HAMP modifications to customers directly even if a prior servicer never reviewed the customer for HAMP prior to the servicing transfer to Chase.

Caliber notified us that they are not a SPA servicer and therefore, they are unable to offer HAMP modification options to borrowers who were not reviewed or previously approved for HAMP by their prior servicer. As a result of not being a SPA servicer, Caliber has requested that we notify them if a customer was not reviewed or offered a HAMP prior to the servicing transfer. We are not privy to Caliber's agreements or policies regarding whether or not they can review or offer your client a HAMP if a prior servicer has not previously reviewed them. You would need to discuss this and the impact of not being a SPA servicer with Caliber directly.

We confirmed that we coded the loan correctly and complied with the instructions from Caliber when the loan was service transferred to indicate that our records did not reflect the borrower was reviewed for HAMP or was offered a HAMP prior to the servicing transfer. If this coding makes them ineligible for HAMP per Caliber guidelines this is something you would need to discuss further with Caliber directly.

We've carefully reviewed the history of your client's loan and we have confirmed that we serviced the loan in good faith, consistent with our guidelines. We didn't find any errors or instances of misrepresentations.

You can contact Caliber at:

Mail:  Caliber Home Loans, Inc.
PO Box 24610
Oklahoma City, OK 73124-0610

Phone: 1-800-570-6768

**We've enclosed the information you requested**
As you requested, we've enclosed copies of the Reconciled Market Value report, created on November 5, 2013, and the Broker Price Opinion (BPO), created on July 11, 2014.

We completed an escrow analysis for your client's mortgage loan once a year to make sure we collected enough to pay taxes and property insurance costs when they were due. We also complete a new analysis when payments to the loan change. We've enclosed copies of the analyses completed on March 16, 2010, March 25, 2011, February 7, 2012, May 24, 2012, May 17, 2013, and August 26, 2014. We've also enclosed the final escrow analysis we conducted on December 2, 2014, as part of the servicing transfer process.

**Here's a brief history of your client's loan**
We initially contacted Francine Paterra on November 25, 2013, to discuss payment assistance options. On December 27, 2013, we spoke with your client again to review the financial information and documents we would need to begin our review of the loan. On the same date, we sent your client the enclosed Notice of Intent to Foreclose letter, which explained the amount due for the loan, and possible options to cure the default. At the time, the loan was due for the October 1, 2013, payment.

We attempted to contact your client on January 15, 2014, and February 3, 2014, but we were unable to reach her, and left messages.

On February 7, 2014, we sent your client a Pre-Foreclose Notice that stated the account was due for the October 1, 2013, payment. The letter also provided the total amount due to bring your client's loan current. A copy of the letter is enclosed for your reference.

==We spoke with your client on March 18, 2014, to review the information we still needed, including the two most recent pay stubs, a new IRS Form 4506T-EZ, and two months of bank statements. We also needed information about the income of the person contributing to the household expenses. Because it was Social Security income, we needed income award letters and two months of bank statements showing the amount deposited.== [handwritten: "Loan mod Submittal"]

We attempted to contact your client again on April 11, 2014, but we were unable to reach her, and left a message.

On June 5, 2014, we referred the loan to our foreclosure attorney, Stiene & Associates, PC, to begin the foreclosure process. We've enclosed the letter our attorney sent your client on June 11, 2014, which included options to avoid a foreclosure sale.

We sent your client a letter on August 12, 2014, explaining the documents we needed to receive in order to review the loan for mortgage assistance, including a completed Request for Mortgage Assistance form (RMA), a completed IRS Form 4506T-EZ, the two most recent pay stubs or other proof of income, two bank statements, and authorization to obtain a credit report from the person contributing to the household expenses. A copy of the letter is enclosed for your reference.

We suspended the foreclosure activity for the loan on August 21, 2014, when your client filed for Chapter 13 bankruptcy, Case Number 14-23184, which was filed on the same date.

We attempted to contact your client on August 25, 2014, to discuss the information we needed to continue our review of the loan, but we were unable to reach her, and left a message.