MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

between

**JPMORGAN CHASE BANK, N.A.**
Seller and Servicer

and

**LSF9 MORTGAGE HOLDINGS, LLC**
Purchaser

Residential Fixed and Adjustable Rate
Nonperforming Mortgage Loans

Dated as of October 29, 2014

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
2 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 3 of 50

## MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

This Mortgage Loan Purchase and Interim Servicing Agreement (the "Agreement") is entered into as of October 29, 2014 by and between, JPMorgan Chase Bank, N.A., a national association (the "Seller" and "Servicer"), and LSF9 Mortgage Holdings, LLC, a limited liability company having an office at 2711 North Haskell Avenue, Suite 1800, Dallas, Texas 75204 ("Purchaser").

Seller agrees to sell, and Purchaser agrees to purchase, on the terms and conditions described below, certain first lien nonperforming residential fixed and adjustable rate mortgage loans (individually a "Mortgage Loan" and collectively the "Mortgage Loans"), all as described herein.

Seller intends to sell the Mortgage Loans to Purchaser on a servicing released basis. The Mortgage Loans will be interim serviced by Servicer on behalf of the Purchaser from the Closing Date through December 1, 2014 or such other date as is mutually agreed to (the "Servicing Transfer Date").

Seller and Purchaser, in consideration of the premises and the mutual agreements set forth herein and other good and valuable consideration, agree as follows:

SECTION 1.  <u>Agreement to Purchase</u>.  Seller agrees to sell, and Purchaser agrees to purchase, on the terms and conditions stated herein, Mortgage Loans having an outstanding aggregate principal balance as of October 22, 2014 (the "Cut-off Date") in the amount of ▮▮▮▮▮▮▮

SECTION 2.  <u>Mortgage Loan Closing Schedule</u>.  Seller and Purchaser hereby agree that the Mortgage Loans to be purchased under this Agreement are described in the schedule (the "Mortgage Loan Closing Schedule") containing the information for each Mortgage Loan as set forth on Exhibit A.  The Mortgage Loan Closing Schedule shall set forth for each Mortgage Loan the interest bearing principal balance thereof as of the Cut-off Date and the deferred principal balance thereof as of the Cut-off Date (together for each Mortgage Loan, the "Cut-off Date Principal Balance").

SECTION 3.  <u>Maintenance and Delivery of Mortgage Loan Closing Schedule.</u> Seller shall deliver a true and correct copy of the Mortgage Loan Closing Schedule to Purchaser on the Closing Date (as defined herein).

SECTION 4.  <u>Purchase Price and Accrued Interest.</u>



2

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
3 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 4 of 50



### SECTION 5. <u>Examination and Delivery of Mortgage Files.</u>

Seller shall, within five (5) business days after September 15, 2014, pursuant to a mutually agreeable bailment agreement to be entered into between Seller, Purchaser and Purchaser's document custodian (the "Custodian"), deliver to the Custodian with respect to the Mortgage Loans , either (i) the Mortgage File consisting of the documents set forth in Exhibit B to the extent in Seller's possession or control, or (ii) in the event Seller has released the Mortgage File to a third party for servicing and/or foreclosure purposes, a copy of the bailee letter from the third party, together with copies of the documents delivered to such third party. Within ten (10) business days of receiving such Mortgage File or bailee letter, Purchaser shall deliver to seller an exception report identifying any missing or deficient Mortgage Loan Documents (the "Collateral Exception Report"). Seller shall use commercially reasonable efforts to provide any such missing document or cure such deficiency no later than five (5) days prior to the Closing Date (the "Document Deficiency Cure Date"). Except as otherwise provided herein, if Seller is unable to provide such missing document or cure such deficiency on or prior to the Document Deficiency Cure Date, Seller and Purchaser shall use commercially reasonable efforts to re-price

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
4 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 5 of 50

the affected Mortgage Loans and in the event the parties cannot agree on a re-price, Purchaser shall have no obligation to purchase the affected Mortgage Loans and Seller shall have no obligation to sell such affected Mortgage Loans. It is understood and agreed that, following the Closing Date, Seller is not responsible for providing any missing documents or correcting any deficiencies identified in the Collateral Exception Report. Notwithstanding the foregoing, Seller and Purchaser agree that with respect to each of the Mortgage Loans set forth on Schedule 1 hereto (the "Deficient Collateral Loan Schedule"), Seller shall use commercially reasonable efforts to cure the collateral deficiency related to such Mortgage Loan set forth on the Deficient Collateral Loan Schedule within ninety (90) days following the Closing Date. If Seller is unable to provide such missing document or cure such deficiency in the related timeframe set forth above, Seller shall, at the Purchaser's option and within ten (10) Business Days following its receipt of notice from Purchaser, repurchase the related Mortgage Loan at the Repurchase Price for such Mortgage Loan in the manner set forth in Section 7(d) herein (it being understood that the cure period set forth in such Section 7(d) shall be deemed to be inapplicable). The above referenced ninety (90) day period may be extended upon request of the Seller with the consent of Purchaser (which consent shall not be unreasonably withheld) so long as Seller is diligently seeking to cure such missing Mortgage Loan Document.

With respect to each Mortgage Loan not registered on MERS, Seller shall prepare and record, at its sole expense, an assignment of mortgage to Purchaser and deliver the original or copy of such recorded assignment of mortgage to Purchaser or its designee promptly upon receipt thereof.

Purchaser acknowledges that it has had an opportunity to conduct a due diligence review of each Mortgage Loan prior to the Closing Date.

**SECTION 6. Closing.** The closing of the purchase and sale of the Mortgage Loans identified on the Mortgage Loan Schedule shall take place on or before August 28, 2014, or such other date as the parties may mutually agree (the "Closing Date").

**SECTION 7. Representations, Warranties and Covenants of Seller and Purchaser.**

a.    Seller and Purchaser each represents and warrants to, and covenants with, the other that as of the Closing Date:

(i)    It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all licenses necessary to carry on its business as now being conducted and is licensed in, qualified to transact business in and is in good standing under the laws of each state in which any Mortgaged Property securing the Mortgage Loans is located , except where the failure to be so licensed and qualified would not have a material adverse effect on its business or operations;

(ii)    It has the full power and authority  to execute, deliver and perform, and to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement, has duly

4

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
5 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 6 of 50

executed and delivered this Agreement and this Agreement constitutes a legal, valid and binding obligation of it, enforceable against it in accordance with its terms, subject to bankruptcy laws and other similar laws of general application affecting rights of creditors and subject to the application of the rules of equity, including those respecting the availability of specific performance;

(iii)     Neither the execution and delivery of this Agreement,  the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement will result in the breach of any term or provision of the charter or by-laws or result in the breach of any material term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under, any material agreement, indenture or loan or credit agreement or other instrument to which it or its property is subject, or result in the violation of any law, rule, regulation, order, judgment or decree to which it or its property is subject;

(iv)     It does not believe that it cannot perform each and every covenant contained in this Agreement; and

(v)     No litigation is pending or, to its knowledge, threatened against it that would materially and adversely affect the execution, delivery or enforceability hereof or the performance of any of its other obligations hereunder in accordance with the terms hereof.

b.     Purchaser represents and warrants to, and covenants with, Seller that:

(i)     Purchaser or its servicer, as applicable, participates in The Home Affordable Modification Program (the "HAM Program") and executes, where applicable, an Assignment and Assumption  Agreement to participate in the HAM Program and shall comply with the HAM Program Guidelines;

(ii)     Purchaser and its servicer will honor all deals, including, without limitation, loan modifications, short sales, deeds-in-lieu and forbearance plans, agreed to by Seller and/or Servicer prior to the Servicing Transfer Date, regardless of whether Purchaser or its servicer agrees with such loss mitigation offered by Seller and/or Servicer;

(iii)     Purchaser shall comply or shall cause its servicer to comply,  in all material respects, with all Applicable Requirements relating to the servicing of the Mortgage Loans. For purposes of this paragraph, Applicable Requirements means: (a) all material contractual obligations of Purchaser or its servicer under the Mortgage Loan Documents; (b) all applicable federal, state and local legal and regulatory requirements (including statutes, rules, regulations and ordinances of each governmental agency or instrumentality having jurisdiction over the servicing of the Mortgage Loans by Purchaser or its servicer; and (c) the servicing practices utilized by Purchaser or its servicer with respect to similar

5

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
6 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 7 of 50

mortgage loans, which, in each case, would result in liability to Purchaser or its servicer;

(iv)   Purchaser's servicer will have either (i) an average (or equivalent) or better rating from either Standard & Poor's, Moody's Investors Service, Fitch Ratings or Dominion Bond Rating Service; or (ii) be approved to service mortgage loans on behalf of Fannie Mae or Freddie Mac;

(v)   Purchaser agrees to accept and continue processing any loan modification requests pending at the time of the Sale Date or the Servicing Transfer Date that are in accordance with Applicable Requirements.  Purchaser agrees to honor trial and permanent loan modification agreements entered into by Seller that are in accordance with Applicable Requirements. Borrowers under the Mortgage Loans related to the Servicing Rights sold pursuant to this Agreement shall be third party beneficiaries under this Section.

(vi)   Purchaser agrees to provide to Seller monthly written reports, in a form reasonably agreed to by the parties, of the loss mitigation activity conducted by Purchaser or Purchaser's servicer with respect to the Mortgage Loans, including, without limitation, modifications offered or completed, which occur within one (1) year following the Servicing Transfer Date. Upon Seller's request, Purchaser shall provide to Seller, its regulators or their agents such information regarding such loss mitigation activity as Seller, its regulators or their agents may reasonably request.

c.   Seller or Servicer, as applicable, represents and warrants to, and covenants with, Purchaser with respect to each Mortgage Loan as of the Closing Date that:

(i)   Seller is the sole owner of the Mortgage Loan and has the right to transfer and sell the Mortgage Loan to Purchaser free and clear of all liens, claims, encumbrances or participations affecting ownership or the right to sell the Mortgage Loans in accordance with the terms and conditions set forth herein;

(ii)   No litigation is currently pending against the Seller or Servicer in which an individual Mortgage Loan is at issue in the litigation, and which litigation, if adversely determined, is reasonably likely to  materially and adversely impact Purchaser's right, title and interest therein, except for the foreclosure actions identified on the Mortgage Loan Closing Schedule;

(iii)   The Mortgage Loan Closing Schedule is true and correct in all material respects;

(iv)   Each Mortgage Note and Mortgage  is genuine and each is the legal, valid and binding obligation of the Mortgagor thereof and contains terms and conditions that  provide for the enforceability of such document or  instrument in accordance with its terms, except as may be limited by judicial discretion, equitable limitations and applicable bankruptcy, insolvency, receivership, conservatorship,

6

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
7 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 8 of 50

reorganization, fraudulent conveyance or other similar laws relating to or affecting the rights and remedies of creditors.   No Mortgage Loan is subject to the defense of usury;

(v)     Servicer has complied, in all material respects, with all Applicable Requirements relating to the servicing of the Mortgage Loans. For purposes of this paragraph, Applicable Requirements means:  (a) all material contractual obligations of the Servicer under the Mortgage Loan Documents; (b) all applicable federal, state and local legal and regulatory requirements (including statutes, rules, regulations and ordinances of each governmental agency or instrumentality having jurisdiction over the servicing of the Mortgage Loans by Servicer); and (c) the servicing practices utilized by Servicer with respect to its servicing of similar mortgage loans in its own portfolio, which, in each case, would result in liability to the Purchaser or have a material adverse impact upon the enforceability of the Mortgage Loans by Purchaser in the event of a failure to comply with  such Applicable Requirement; and

(vi)     The Mortgage has not been satisfied, canceled or subordinated, in whole or in part, or rescinded, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination  or rescission.

    d.     It is understood and agreed that the representations and warranties set forth in this Section 7(c) shall survive the sale and delivery of the Mortgage Loans to Purchaser and shall inure to the benefit of Purchaser, notwithstanding any examination of any Mortgage File for a period of six (6) months following the Closing Date, if the notice of such breach is provided within six (6) months following the Closing Date.  Upon discovery by either Seller or Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans, the party discovering such breach shall give prompt written notice to the other.  Within a reasonable time not to exceed ninety (90) days of its discovery or its receipt of notice of any such breach of a representation or warranty, Seller shall cure such breach in all material respects or shall repurchase  such Mortgage Loan at an amount equal to the sum of (A) the related Purchase Price less the sum of (i) any principal amounts received from the Mortgagor, (ii) any incentive fees received by Purchaser resulting from Purchaser's modifying a Mortgage Loan in accordance with and subject to the HAM Program, and (iii) any insurance proceeds or condemnation proceeds received by Purchaser with respect to the Mortgage Loan plus (B) the amount of any Accrued Interest paid by Purchaser to Seller on the Closing Date in accordance with Section 4 hereof plus (C) the amount equal to any Servicing Advances reimbursed by Purchaser to Servicer hereunder and any Servicing Advances made by Purchaser or its servicer after the Servicing Transfer Date, less any amounts recovered or collected by Purchaser or its servicer with respect to such Servicing Advances(such amount, the "Repurchase Price"). The above referenced ninety (90) day period may be extended upon request of Seller with the consent of Purchaser, which consent shall not be unreasonably withheld.

        In connection with any repurchase of a Mortgage Loan hereunder by Seller and upon receipt of the Repurchase Price, Purchaser shall, subject to any requirements under RESPA, immediately transfer the servicing of such Mortgage Loan to Seller or its designee, which

7

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
8 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 9 of 50

transfer shall include transfer of the servicing file and any other servicing records in Purchaser's possession and control and transfer of any escrow account. Further, Purchaser agrees to execute any documents as reasonably required by Seller to convey proper title of the Mortgage Loan, including, but not limited to, an assignment of mortgage. Seller shall promptly reimburse Purchaser for its reasonable costs and expenses in connection therewith provided that reasonable documentation evidencing any such cost or expense is submitted within sixty (60) days of such repurchase.

It is understood and agreed that the obligations of Seller set forth in this Section 7 to cure or repurchase for a defective Mortgage Loan constitute the sole remedies of Purchaser respecting a breach of the foregoing representations and warranties.

e.    Except as otherwise expressly provided herein, each Mortgage Loan is being sold by Seller with NO REPRESENTATIONS OR WARRANTIES and on an "AS IS WHERE IS, WITH ALL FAULTS", basis with NO RECOURSE WHATSOEVER and WITH NO REPURCHASE OR BUY BACK OBLIGATIONS WHATSOEVER.

f.    In the event of any litigation, investigation, legal settlement, consent order or enforcement order involving the Mortgage Loans (collectively, "Legal Action") occurring after the Closing Date in which Seller is named as a defendant, respondent or party or for which a claim or demand for monetary damages or expenses, corrective action or remediation is made against Seller, Purchaser and Seller agree to enter into good faith negotiations such that: (1) Seller shall repurchase from Purchaser such Mortgage Loan or Loans which are included in such Legal Action at a mutually agreeable price, (2) Seller shall assume or direct the defense or responsive action with respect to such Legal Action, shall employ counsel reasonably acceptable to Purchaser and shall assume all expenses with respect to the defense or responsive action and proceed in a manner as the parties may reasonably agree upon, provided that with respect to any Legal Action in which there is a conflict of interest between Seller and Purchaser, Purchaser may, in its sole discretion, assume the defense or responsive action in connection with its interest with respect to the Legal Action in such manner as may be reasonably appropriate, at Purchaser's expense, or (3) Seller and Purchaser shall mutually agree to another course of action. In no event shall more than five (5) percent of the Mortgage Loans, by Cut-off Date Principal Balance, be repurchased by Seller due to Legal Action.

g.    Seller shall provide Purchaser with accurate and complete Mortgage Loan information and documentation in Seller's possession and control at the time of the Servicing Transfer Date so as to enable the Purchaser to service the Mortgage Loans following the Servicing Transfer Date in accordance with applicable law.

h.    Seller utilizes a HUD-approved agency, Homeownership Preservation Foundation ("HPF"), in connection with the requirements of U.S. Department of Treasury Directive 13-08 to offer financial counseling to borrowers who enter into a new trial modification or who have a permanent modification at risk of default. Seller will identify to Purchaser the borrowers referred to HPF for a first or second referral. From and after the Servicing Transfer Date, Purchaser shall be responsible for compliance with the requirements of Treasury Directive 13-08 with respect to the Mortgage Loans, if applicable.

8

**SECTION 8.    Reimbursement of Delinquent Charges.** Seller hereby agrees to reimburse Purchaser for certain delinquent charges consisting of taxes, ground rents, assessments and legal fees due and owing with respect to the Mortgage Loan and allocable prior to the Cut-off Date (the Purchaser being responsible for such amounts beginning on such date), provided that Seller receives notice of such claim for reimbursement on or before a date ninety (90) days after the Servicing Transfer Date. Seller shall reimburse Purchaser by wire transfer in immediately available funds promptly after (i) a written claim is made under this Section 8 and (ii) Seller is provided with evidence reasonably satisfactory to Seller demonstrating (a) the validity of such claim and (b) Seller's obligation to pay such claim under this Section 8, within the time frame set forth in this Section 8. Any provision of this Agreement to the contrary notwithstanding, the aggregate liability of Seller for claims made for such delinquent charges with respect to all Mortgage Loans shall not exceed 3% of the amount set forth in Section 1.

**SECTION 9.    Costs.** Each party will bear its own costs, fees and expenses in connection with the transaction contemplated herein (including the costs, fees and expenses of its attorneys). Seller will bear the cost of the delivery of the servicing/origination files for the Mortgage Loans; the costs of delivering the Mortgage Files; the costs of preparing and recording any assignments of mortgage to Purchaser or its designee and the cost of endorsing notes to blank; the costs of delivering complete master-file tape information and other electronically stored information to Purchaser; the costs of notifying, hazard, flood and mortgage insurance companies, as necessary, and the costs of shipping all Mortgage Loans records and servicing-related files to Purchaser or its designee. Purchaser will be responsible for the costs of its due diligence. Each party will be responsible for notifying the mortgagors of the servicing transfer in accordance with applicable law. Purchaser will be solely responsible for notifying the mortgagors of the change in creditor, in accordance with applicable law.

**SECTION 10.    Interim Servicing.** The Mortgage Loans are being sold on a servicing released basis. On the Closing Date, Servicer, as interim servicer, shall perform all servicing responsibilities related to the Mortgage Loans on behalf of Purchaser as described herein, and Servicer shall cease all servicing responsibilities related to the Mortgage Loans on behalf of Seller. During the period between the Closing Date and the Servicing Transfer Date (the "Interim Servicing Period"), the Mortgage Loans shall be serviced in a manner consistent with the Applicable Requirements, as defined in Section 7(c)(v) hereof. All Servicing Advances made by Servicer from and after the Cut-off Date through the Servicing Transfer Date are reimbursable to Servicer by Purchaser as set forth in Section 4 hereof. The Servicing Transfer Date shall be a date mutually agreeable to Servicer and Purchaser within sixty (60) days of the Closing Date unless otherwise agreed to by Servicer and Purchaser.

During the Interim Servicing Period all collections on account of or related to the Mortgage Loans shall be deposited in to a custodial account within two (2) business days of receipt thereof and all such collections shall be deemed held in trust for Purchaser and remitted to Purchaser within ten (10) business days following the Servicing Transfer Date pursuant to the wire instructions provided by Purchaser to Seller via e-mail. Purchaser's prior consent, which will not be unreasonably withheld, shall be required with respect to (i) the Servicer's institution or completion of any foreclosure proceeding or acceptance of any offer on any REO Property, assumption, short pay off, material loss mitigation decision or modification of any Mortgage

9

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
10 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 11 of 50

Loan during the Interim Servicing Period, and (ii) Servicer making any Servicing Advance in excess of $2,000 for a Mortgage Loan during the Interim Servicing Period. Purchaser shall be deemed to have given consent in connection with a particular matter if Purchaser does not affirmatively grant or deny consent within three (3) Business Days from the date Purchaser receives a written request for consent for such matter.

The transfer of servicing from Servicer to Purchaser or its designee shall be in accordance with the instructions attached hereto as Exhibit C, subject to any modifications which the parties hereto deem necessary and mutually agree upon after the Closing Date. Servicer shall be paid a fee (the "Interim Servicing Fee") by Purchaser for servicing the Mortgage Loans during the Interim Servicing Period equal to $75 per loan per month or prorated for any partial month thereof. Servicer shall be entitled to net such Interim Servicing Fee from the remittance due to Purchaser as described in Section 4 hereof or, in the event such remittance is insufficient to cover the Interim Servicing Fee, the Interim Servicing Fee shall be paid to Servicer by Purchaser via wire transfer of immediately available Federal funds on or prior to the Servicing Transfer Date..

Notwithstanding the foregoing or any provision hereof to the contrary, neither Servicer nor Seller shall be obligated to take action (other than advising Purchaser in writing) with respect to a Mortgage Loan to preserve Purchaser's rights to a deficiency judgment in the event that the related Mortgagor seeks a discharge in a bankruptcy proceeding. Seller, at its cost and expense, shall take such steps as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to Purchaser and shall record the assignments of mortgage from Seller to Purchaser. Seller shall deliver to Purchaser the recorded assignments of mortgage from Seller to Purchaser promptly upon receipt thereof

**SECTION 11.  Nonperforming Mortgage Loans.**  Purchaser acknowledges that all or substantially all of the Mortgage Loans are or have been nonperforming on their original and/or modified terms.

**SECTION 12.  Foreclosure; Substitution of Seller.**  As soon as practical following the Servicing Transfer Date, Purchaser shall take all reasonable actions necessary (a) to substitute Purchaser as plaintiff in all foreclosure actions pending at the time of the Servicing Transfer Date and (b) to substitute or otherwise confirm Purchaser as owner of the Mortgage Loans in any other proceedings or with respect to any other actions in which Seller is identified as owner of the Mortgage Loans prior to the Servicing Transfer Date. To the extent applicable, Seller shall reasonably cooperate with Purchaser or its designee to minimize disruptions to foreclosures in process as of the Servicing Transfer Date as a result of the transfer of servicing to Purchaser or its designee, including executing such documentation as Purchaser may reasonably require to substitute Purchaser as plaintiff in any foreclosure actions.

**SECTION 13.  Confidentiality.**  Seller and Purchaser each hereby agrees to fully comply with all applicable laws, rules and regulations governing the confidentiality of any information acquired from or concerning the mortgagors. In addition, Purchaser expressly agrees and acknowledges that the terms and existence of this transaction are confidential. Purchaser agrees that it shall not make or publish any public statement that utilizes Seller's name in any manner, without Seller's express prior written consent, except (i) as expressly required by

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
11 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 12 of 50

applicable law, rule or regulation and after providing Seller a reasonable opportunity to contest the publication of any such public statement or (ii) in connection with Section 12 hereof.

SECTION 14. **Brokers**. Each party to this Agreement hereby represents and warrants to the other party that it either (i) has not made any agreement to pay any agent, finder, broker or any other Person any fee or commission in the nature of a finder's or originator's fee arising out of or in connection with the transaction contemplated by this Agreement, or (ii) has made such an agreement and will indemnify and hold the other party harmless from all claims and demands made by any Person under such agreement.

SECTION 15. **Survival of Agreement**. This Agreement includes provisions which the parties hereto intend will remain in effect after the closing of the transaction contemplated by this Agreement. Accordingly, this Agreement shall survive and remain in effect after such closing.

SECTION 16. **Notices**. All demands, notices and communications under this Agreement shall be in writing and shall be deemed to have been duly given if mailed by registered or certified mail, return receipt requested, or by overnight delivery service, addressed to the appropriate party hereto at the address stated in the introduction to this Agreement in the case of the Purchaser and in the case of the Seller, to JPMorgan Chase Bank, N.A., 194 Wood Avenue South, Iselin, NJ 08830, attention Capital Markets Manager, with a copy to JPMorgan Chase Bank, N.A. 194 Wood Avenue South, Iselin, NJ 08830, attention, General Counsel. Any such demand, notice or communication shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced by the date noted on the return receipt or overnight delivery receipt).

SECTION 17. **Separability Clause**. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

SECTION 18. **Counterparts**. For the purpose of facilitating the execution of this Agreement, and for other purposes, this Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. A facsimile, electronic, or photocopy signature on this Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION 19. **Place of Delivery and Governing Law**. This Agreement shall be deemed to have been made in the State of New York. The Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, excluding conflict of laws issues. The parties hereby agree that all disputes arising hereunder

11

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
12 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 13 of 50

shall be submitted to and hereby subject themselves to the jurisdiction of the courts of competent jurisdiction, state and federal, in the State of New York.

**SECTION 20.  Bill of Sale /Additional Documents**.  Seller shall execute a bill of sale substantially in the form annexed hereto as Exhibit "D".  Furthermore, each party to this Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Agreement. Seller shall deliver to Purchaser or its designee within thirty (30) days following the Closing Date, a limited power of attorney in the form  of Exhibit E hereto.

**SECTION 21.  Successors and Assigns; Assignment**.  This Agreement shall bind and inure to the benefit of and be enforceable by Seller and Purchaser, and their respective permitted successors and assigns.  This Agreement shall not be assigned, pledged or hypothecated by Purchaser or Seller without the prior written consent of the other party to this Agreement.

**SECTION 22.  Amendments**.  Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by a written instrument signed by both Seller and Purchaser.

**SECTION 23.  Interpretation**.  For all purposes of this Agreement, initially capitalized terms used herein have the meanings ascribed hereto in the Agreement.  Except as expressly otherwise provided herein or unless the context otherwise requires, for purposes of this Agreement the words "herein," "hereto," "hereof" and "hereunder" and other words of similar effect shall refer to this Agreement as a whole and not to any particular provision.

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg 13 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase   Pg 14 of 50

IN WITNESS WHEREOF, Seller, Servicer and Purchaser have caused their names to be signed hereto by their respective authorized officers as of the date first above written.

**SELLER AND SERVICER:**

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: _____
Title: 

**PURCHASER:**

**LSF9 MORTGAGE HOLDINGS, LLC**

By:    LSF9 Bermuda Mortgage Holdings, Ltd., a
       Bermuda company, as Class A Manager of LSF9
       Mortgage Holdings, LLC

       By: _____
       Name:  Sandra Collins
       Title:  Vice President

By:    LSF9 REO Investments, LLC, a Delaware limited
       liability company, as Class B Manager of LSF9
       Mortgage Holdings, LLC

       By: _____
       Name:  Kyle Volluz
       Title:  Vice President

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
14 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 15 of 50

IN WITNESS WHEREOF, Seller, Servicer and Purchaser have caused their names to be signed hereto by their respective authorized officers as of the date first above written.

**SELLER AND SERVICER:**

**JPMORGAN CHASE BANK, N.A.**

By: _____
Name: _____
Title:

**PURCHASER:**

**LSF9 MORTGAGE HOLDINGS, LLC**

By:    LSF9 Bermuda Mortgage Holdings, Ltd., a
        Bermuda company, as Class A Manager of LSF9
        Mortgage Holdings, LLC

        By: _____
        Name:  Sandra Collins
        Title:  Vice President

By:    LSF9 REO Investments, LLC, a Delaware limited
        liability company, as Class B Manager of LSF9
        Mortgage Holdings, LLC

        By: _____
        Name:  Kyle Volluz
        Title:  Vice President

Mortgage Loan Purchase and Interim Servicing Agreement    Signature Page

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
15 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 16 of 50

## EXHIBIT A

### MORTGAGE LOAN SCHEDULE FIELDS

1. Mortgage Loan identifying number
2. Mortgagor's name
3. Lien position
4. Street address of the Mortgaged Property including city, state and zip code
5. Interest bearing principal balance of the Mortgage Loan as of the Cut-off Date
6. Next Due Date of the Mortgage Loan
7. Interest Rate of the Mortgage Loan as of the Cut-off Date
8. Purchase Price Percentage
9. Deferred principal balance of the Mortgage Loan as of the Cut-off Date
10. Foreclosure Flag
11. Bankruptcy Flag
12. Modification Flag
13. Current P&I
14. Scheduled Maturity Date
15. Total Escrow Advance Balance of the Mortgage Loan as of the Cut-off Date
16. Total Corporate Advance Balance of the Mortgage Loan as of the Cut-off Date

A-1

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
16 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 17 of 50

<u>EXHIBIT B</u>

CONTENTS OF MORTGAGE FILE

With respect to each Mortgage Loan for which a bailee letter is not delivered:

1.   The original Mortgage Note bearing all intervening endorsements endorsed to
     Purchaser. If the original Mortgage Note is unavailable, the Seller will provide an
     affidavit of a lost note with a copy of the Mortgage Note.  To the extent that there
     is no room on the face of the Mortgage Note for endorsements, the endorsement
     may be contained on an allonge.

2.   The original Mortgage or a copy of the Mortgage, in either case with evidence of
     recording thereon.

3.   The originals, or certified true copies from the appropriate recording office, of all
     intervening assignments of mortgage with evidence of recording thereon (except
     for Mortgage Loans registered with the MERS System, in which case, the
     originals or certified true copies of all intervening assignments of mortgage with
     evidence of recording thereon prior to the intervening assignment to MERS, if
     any), or, if the original intervening assignment has not yet been returned from the
     recording office, a copy or image of such assignment downloaded from the
     appropriate recorder's office website.

4.   Except with respect to each MERS Designated Mortgage Loan, an assignment of
     mortgage to the Purchaser or its designee.

5.   Originals, or copies of each assumption agreement, extension agreement,
     modification or substitution agreement, if any.

6.   With respect to Mortgage Loans that are not cooperative loans, the original or a
     photocopy, electronic copy or image of the mortgagee title insurance policy or, if
     the policy has not yet been issued or is unavailable, a written commitment or
     interim binder issued by the title insurance company or a replacement ALTA title
     policy.

7.   If the Mortgage Note, Mortgage or other document has been signed by a person
     on behalf of the Mortgagor, an original or copy of the power of attorney or other
     instrument that authorized such person to sign.

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
17 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 18 of 50

<u>EXHIBIT C</u>
<u>SERVICING TRANSFER INSTRUCTIONS</u>

**SEE ATTACHED**

C-1

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
18 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 19 of 50

<u>EXHIBIT D</u>

**FORM OF BILL OF SALE**

JPMorgan Chase Bank, N.A. (the "Seller"), for value received and pursuant to the terms and conditions of that certain Mortgage Loan Purchase Agreement (the "Agreement") dated as of _____, 2014 by and between, JPMorgan Chase Bank, N.A., a national association, and _____, a _____ having an office at _____ ("Purchaser"), does hereby sell, assign, transfer and convey to the Purchaser, its heirs, administrators, representatives, successors and assigns, all rights, title and interests of the Seller, as of the date hereof, in, to and under the Mortgage Loans described on Schedule I attached hereto.

THIS BILL OF SALE IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EXPRESSED, IMPLIED OR IMPOSED BY LAW, EXCEPT AS PROVIDED IN THE AGREEMENT.

EXECUTED this ____day of _____, 2014.

JPMORGAN CHASE BANK, N.A.
As Assignor

By: _____
Name: _____
Title:

D-1

## SCHEDULE 1

### DEFICIENT COLLATERAL LOAN SCHEDULE

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
20 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 21 of 50

<u>EXHIBIT E</u>

**LIMITED POWER OF ATTORNEY**

JPMorgan Chase Bank, N.A. (hereinafter called "<u>Seller</u>") hereby appoints _____ (hereinafter called "Servicer"), as its true and lawful attorney-in-fact to act in the name, place and stead of Seller for the purposes set forth below. This Limited Power of Attorney is given pursuant to a certain Mortgage Loan Purchase and Interim Servicing Agreement by and between Seller and _____ ("Buyer") dated as of _____ (the "<u>Agreement</u>") to which reference is made for the definition of all capitalized but undefined terms herein.

Now therefore, Seller does hereby constitute and appoint Servicer as the true and lawful attorney-in-fact of Seller and in Seller's name, place and stead with respect to each Mortgage Loan as defined in the Agreement, in which JPMorgan Chase Bank, N.A. is the current lienholder of record, for the following, and only the following, purposes:

1.  To execute, acknowledge, seal and deliver satisfactions/releases/reconveyances of deed of trust/mortgage, tax authority notifications and declaration, deeds of conveyance (including, but not limited to REO deeds to end purchasers), and transfer documents, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, and/or recordation or filing. To execute, assign, and deliver all documentation required to foreclose delinquent Mortgage Loans or otherwise enforce the rights under such Mortgages and the related Mortgage Note in Buyer or its designee's own name, and to correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by the Seller. **The foregoing should not be construed as a grant of authority from Seller to Servicer to foreclose delinquent Mortgage Loans or otherwise enforce rights under such Mortgages and the related Mortgage Note in Seller's name.**

2.  To endorse and/or assign checks or negotiable instruments received by Servicer as a Mortgage Loan payment or in the form of insurance proceeds.

Seller further grants to Servicer full authority to act in any manner both proper and necessary to exercise the foregoing powers, and ratifies every act that Servicer may lawfully perform in exercising those powers by virtue hereof.

This Limited Power of Attorney shall expire on or before the date that is six (6) months from the date hereof. Notwithstanding the foregoing, this Limited Power of Attorney shall expire, with respect to each individual Mortgage Loan, on such earlier date that _____, or its designee (provided that such designee is an affiliate of _____) becomes mortgagee of record of such Mortgage Loan.

Buyer shall indemnify, defend and hold harmless Seller and its successors and assigns from and against any and all Losses (as defined in the Agreement) arising out of, related to, or in connection with (i) any act taken by Servicer pursuant to this Limited Power of Attorney, which act results in a claim solely by virtue of the unlawful use of this Limited Power of Attorney (and

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
21 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 22 of 50

not as a result of a claim related to the underlying instrument with respect to which this Limited Power of Attorney has been used), or (ii) any use or misuse of this Limited Power of Attorney in any manner or by any person not expressly authorized hereby.

IN WITNESS WHEREOF, Seller has executed this Limited Power of Attorney this ___ day of _____, 2014.

JPMORGAN CHASE BANK, N.A

By: _____
Name:
Title:


By: _____
Name:
Title:


_____

Witnesses:



_____

Witnesses:



STATE OF _____
COUNTY OF _____

        The foregoing instrument was acknowledged before me this ___day of _____, 2014, by _____ Vice President for JPMorgan Chase Bank N.A.


(SEAL)                          _____
                                Notary Public
                                My Commission Expires:

                                Per personally known XX
                                OR Produced Identification_____
                                Type of Identification Produced_____


E-3

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
22 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 23 of 50

IN WITNESS WHEREOF, Seller, Servicer and Purchaser have caused their names to be signed hereto by their respective authorized officers as of the date first above written.

**SELLER AND SERVICER:**

**JPMORGAN CHASE BANK, N.A.**

By: _____

Name: _____

Title: _____

**PURCHASER:**
**LSF9 MORTGAGE HOLDINGS, LLC**

By:   LSF9 Bermuda Mortgage Holdings, Ltd., a
      Bermuda company, as Class A Manager of LSF9
      Mortgage Holdings, LLC

      By: _____
      Name:  Sandra Collins
      Title:  Vice President

By:   LSF9 REO Investments, LLC, a Delaware limited
      liability company, as Class B Manager of LSF9
      Mortgage Holdings, LLC

      By: _____
      Name: _____
      Title: _____

Mortgage Loan Purchase and Interim Servicing Agreement – Signature Page

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
23 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 24 of 50

## BILL OF SALE

JPMorgan Chase Bank, N.A. (the "Seller"), for value received and pursuant to the terms and conditions of that certain Mortgage Loan Purchase and Interim Servicing Agreement (the "Agreement") dated as of October 29, 2014 by and between, JPMorgan Chase Bank, N.A., a national association, and LSF9 Mortgage Holdings, LLC, a limited liability company having an office at 2711 North Haskell Avenue, Suite 1800, Dallas, Texas 75204 ("Purchaser"), does hereby sell, assign, transfer and convey to the Purchaser, its heirs, administrators, representatives, successors and assigns, all rights, title and interests of the Seller, as of the date hereof, in, to and under the Mortgage Loans described on Schedule I attached hereto.

THIS BILL OF SALE IS EXECUTED WITHOUT RECOURSE AND WITHOUT REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EXPRESSED, IMPLIED OR IMPOSED BY LAW, EXCEPT AS PROVIDED IN THE AGREEMENT.

EXECUTED this 29th day of October, 2014.

JPMORGAN CHASE BANK, N.A.
As Assignor

By: _____
Name: _____

Title:

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
24 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 25 of 50

## RELEASE OF MORTGAGE LOANS

Wells Fargo Bank, N.A.
751 Kasota Avenue
Minneapolis, MN 55414
Attn: Document Custody

LSF9 Mortgage Holdings, LLC
888 7th Avenue, Suite 1800
New York, NY 10019
Attention: Legal Counsel

### Re: Release of Mortgage Loans

Reference is hereby made to (i) the Mortgage Loan Purchase and Interim Servicing Agreement, dated as of October 29, 2014 (the "MLPA") by and between JPMorgan Chase Bank, N.A. (the "Seller") and LSF9 Mortgage Holdings, LLC (the "Buyer"). Pursuant to the MLPA, Buyer has agreed to purchase certain mortgage loans identified on Schedule A hereto on a servicing released basis (the "Mortgage Loans") for a price equal to ███████████ (the "Purchase Price") and Seller has agreed to sell the Mortgage Loans to Buyer. Capitalized terms not defined herein shall have the respective meanings assigned to them in the MLPA.

The Seller hereby releases the Mortgage Loans and the related Mortgage Files to the Bailee on behalf of the Buyer.

Very truly yours,

JPMORGAN CHASE BANK, N.A.

By: _____
Name: _____
Title: Authorized Officer

## Schedule A

### [Mortgage Loans]

CHL Loan ID        Seller Loan ID

CHL Loan ID    Seller Loan ID

9076

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg 28 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase    Pg 29 of 50

CHL Loan ID    Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
29 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 30 of 50

CHL Loan ID    Seller Loan ID

CHL Loan ID    Seller Loan ID

| CHL Loan ID | Seller Loan ID |
|---|---|
| | |

CHL Loan ID     Seller Loan ID

CHL Loan ID    Seller Loan ID

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg 34 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase   Pg 35 of 50

CHL Loan ID    Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg 35 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase    Pg 36 of 50

CHL Loan ID    Seller Loan ID

CHL Loan ID    Seller Loan ID

| CHL Loan ID | Seller Loan ID |
| --- | --- |

CHL Loan ID    Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg 39 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase    Pg 40 of 50

| CHL Loan ID | Seller Loan ID |
| --- | --- |
| | |

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
40 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 41 of 50

| CHL Loan ID | Seller Loan ID |
| --- | --- |

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
41 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 42 of 50

CHL Loan ID   Seller Loan ID

| CHL Loan ID | Seller Loan ID |
|---|---|

CHL Loan ID    Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
44 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 45 of 50

CHL Loan ID    Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg 45 of 79

14-23184-rdd  · Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase    Pg 46 of 50

CHL Loan ID    Seller Loan ID

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg 46 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge Loan Purchase Agreement as between LSF9 and Chase   Pg 47 of 50

CHL Loan ID     Seller Loan ID

14-23184-rdd    Doc 47-1    Filed 06/30/16    Entered 06/30/16 20:05:34    Exhibit    Pg
47 of 79

14-23184-rdd    Doc 37-2    Filed 04/21/16    Entered 04/21/16 19:26:07    Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase    Pg 48 of 50

| CHL Loan ID | Seller Loan ID |
|---|---|

14-23184-rdd   Doc 47-1   Filed 06/30/16   Entered 06/30/16 20:05:34   Exhibit   Pg
48 of 79

14-23184-rdd   Doc 37-2   Filed 04/21/16   Entered 04/21/16 19:26:07   Exhibit Mtge
Loan Purchase Agreement as between LSF9 and Chase   Pg 49 of 50

CHL Loan ID    Seller Loan ID

# EXHIBIT "C"

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") is entered into as of December 1, 2014 ____ by and between JPMorgan Chase Bank, NA ____ ("Assignor") and Colber Home Loans, Inc. ("Assignee"). All terms used, but not defined, herein shall have the meanings ascribed to them in the Underlying Agreement (defined below).

WHEREAS, Assignor and Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Fannie Mae"), are parties to a Commitment to Purchase Financial Instrument and Servicer Participation Agreement, a complete copy of which (including all exhibits, amendments and modifications thereto) is attached hereto and incorporated herein by this reference (the "Underlying Agreement");

WHEREAS, Assignor has agreed to assign to Assignee all of its rights and obligations under the Underlying Agreement with respect to the Eligible Loans that are identified on the schedule attached hereto as Schedule 1 (collectively, the "Assigned Rights and Obligations"); and

WHEREAS, Assignee has agreed to assume the Assigned Rights and Obligations.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Assignment. Assignor hereby assigns to Assignee all of Assignor's rights and obligations under the Underlying Agreement with respect to the Assigned Rights and Obligations.

2. Assumption. Assignee hereby accepts the foregoing assignment and assumes all of the rights and obligations of Assignor under the Underlying Agreement with respect to the Assigned Rights and Obligations.

3. Effective Date. The date on which the assignment and assumption of rights and obligations under the Underlying Agreement is effective is December 1, 2014 ____.

4. Successors. All future transfers and assignments of the Assigned Rights and Obligations transferred and assigned hereby are subject to the transfer and assignment provisions of the Underlying Agreement. This Assignment and Assumption Agreement shall inure to the benefit of, and be binding upon, the permitted successors and assigns of the parties hereto.

5. Counterparts. This Assignment and Assumption Agreement may be executed in counterparts, each of which shall be an original, but all of which together constitute one and the same instrument.

E-1

Last updated 04/23/12

IN WITNESS WHEREOF, Assignor and Assignee, by their duly authorized officials, hereby execute and deliver this Assignment and Assumption Agreement, together with Schedule 1, effective as of the date set forth in Section 3 above.

ASSIGNOR: JPMorgan Chase Bank, NA

By: _____
Name: _____Matthew Kibble_____
Title: ___VICE PRESIDENT___
Date: ___12/4/14___

ASSIGNEE: Caliber Home Loans, Inc

By: _____
Name: _____
Title: ___SVP___
Date: ___12-14-14___

## SCHEDULE 1

### To

### ASSIGNMENT AND ASSUMPTION AGREEMENT

All Non-GSE loans identified on the attached MHA Reporting Transfer Loan List are
incorporated by reference into this Schedule 1

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") is entered into as of December 1, 2014 by and between JPMorgan Chase Bank, NA ("Assignor") and CalIber Home Loans, Inc. ("Assignee"). All terms used, but not defined, herein shall have the meanings ascribed to them in the Underlying Agreement (defined below).

WHEREAS, Assignor and Federal National Mortgage Association, a federally chartered corporation, as financial agent of the United States ("Fannie Mae"), are parties to a Commitment to Purchase Financial Instrument and Servicer Participation Agreement, a complete copy of which (including all exhibits, amendments and modifications thereto) is attached hereto and incorporated herein by this reference (the "Underlying Agreement");

WHEREAS, Assignor has agreed to assign to Assignee all of its rights and obligations under the Underlying Agreement with respect to the Eligible Loans that are identified on the schedule attached hereto as Schedule I (collectively, the "Assigned Rights and Obligations"); and

WHEREAS, Assignee has agreed to assume the Assigned Rights and Obligations.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Assignment. Assignor hereby assigns to Assignee all of Assignor's rights and obligations under the Underlying Agreement with respect to the Assigned Rights and Obligations.

2. Assumption. Assignee hereby accepts the foregoing assignment and assumes all of the rights and obligations of Assignor under the Underlying Agreement with respect to the Assigned Rights and Obligations.

3. Effective Date. The date on which the assignment and assumption of rights and obligations under the Underlying Agreement is effective is December 1, 2014.

4. Successors. All future transfers and assignments of the Assigned Rights and Obligations transferred and assigned hereby are subject to the transfer and assignment provisions of the Underlying Agreement. This Assignment and Assumption Agreement shall inure to the benefit of, and be binding upon, the permitted successors and assigns of the parties hereto.

5. Counterparts. This Assignment and Assumption Agreement may be executed in counterparts, each of which shall be an original, but all of which together constitute one and the same instrument.

Last updated 04/25/12

IN WITNESS WHEREOF, Assignor and Assignee, by their duly authorized officials, hereby execute and deliver this
Assignment and Assumption Agreement, together with Schedule 1, effective as of the date set forth in Section 3 above.

**ASSIGNOR:** JPMorgan Chase Bank, NA

By: _____
Name: _____Matthew Kibbie____
Title: __VICE PRESIDENT__
Date: __12/4/14__

**ASSIGNEE:** Caliber Home Loans, Inc

By: _____
Name: _____
Title: __VP__
Date: __12-4-14__

## SCHEDULE 1

### To

### ASSIGNMENT AND ASSUMPTION AGREEMENT

All Non-GSE loans identified on the attached MHA Reporting Transfer Loan List are
incorporated by reference into this Schedule 1

TransferorServicerLoanNumber    TransfereeServicerLoanNumber































